CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 19, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **JACOB ZENO,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:24-cv-00573** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **JOHNNY HALL, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION</u>**

Jacob Zeno, a Virginia inmate proceeding <u>pro se</u>, filed this civil action under 42 U.S.C. § 1983 against eleven correctional officials at Red Onion State Prison (Red Onion). The case is presently before the court on the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 53. Zeno has not responded to the motion, and the time for doing so has expired. For the reasons set forth below, the motion is **GRANTED** with respect to the federal constitutional claims asserted under § 1983, and the court declines to exercise supplemental jurisdiction over any claim asserted under state law.

## I.    Background

Zeno is currently confined at Marion Correctional Treatment Center. The events giving rise to this action occurred while he was incarcerated at Red Onion. At the time of the events in question, defendant Hall was the chief of security at Red Onion; defendant Duncan was the chief of housing and programs; defendant Collins was a unit manager; defendant Williams was a correctional lieutenant; defendant Taylor was a correctional sergeant; defendants Flanary, McCray, and Ray were correctional officers; defendants Wampler and Clevinger were K-9 officers; and defendant Mullins was a correctional officer in training. Am. Compl., ECF No. 50, at 4–5.

On December 30, 2023, at approximately 7:00 a.m., Flanary and McCray searched an unidentified inmate housed in building C at Red Onion and escorted him to the building's outdoor recreation cages. Id. at 6. Zeno alleges that the officers performed the search "without properly following all search procedures." Id. Approximately 30 minutes later, Flanary and McCray escorted Zeno to a recreation cage, where he remained for a couple of hours. Id.

At approximately 10:30 a.m., while Flanary and Taylor were escorting Zeno back to building C, the other inmate exited a recreation cage and attacked Zeno, "stabbing [him] at least 4 times." Id. at 7–8. Zeno alleges that 30 to 60 seconds elapsed before Flanary and Taylor intervened. Id. at 7. Once the situation was under control, Zeno was taken to the medical department and ultimately transported to a local hospital, where his stab wounds were closed with staples and Dermabond. Id.

At the time of the inmate attack, Clevinger, Wampler, Ray, and Mullins were not stationed at their designated posts or making "proper security checks." Id. Instead, Zeno alleges that they had gone inside to "get out of the cold." Id. Zeno further asserts that Hall, Duncan, Collins, Williams, and Taylor failed to ensure that security procedures were followed by subordinate officers. Id. at 8.

Based on the foregoing allegations, Zeno seeks monetary damages and injunctive relief under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment. Id. at 9. He also seeks to hold the defendants liable under state law for gross negligence and intentional infliction of emotional distress. Id. The amended complaint indicates that the federal claims are asserted against the defendants in their individual and official capacities. Id. at 5.

## II.     Standard of Review

In response to the amended complaint, the defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A complaint filed without the assistance of counsel must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se plaintiff must still "allege sufficient facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" King, 825 F.3d at 225 (quoting Twombly, 550 U.S. at 555, 570).

## III.     Discussion

### A.     Claims under § 1983

Zeno filed this action under 42 U.S.C. § 1983. Section 1983 is "a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

3

### 1.    Claims Against Defendants in Their Official Capacities

As noted above, Zeno filed suit against the defendants in their official and individual capacities. A suit against a state official in his official capacity is "no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that the Eleventh Amendment "bars suit against state officials in their official capacity for damages under 42 U.S.C. § 1983." Lawson v. Gault, 828 F.3d 239, 278 (4th Cir. 2016) (citing Will, 491 U.S. at 71). Additionally, whereas § 1983 "permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." Fauconier v. Clarke, 966 F.3d 265, 279-80 (4th Cir. 2020).

In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity that allows individuals to seek prospective equitable relief against state officials to prevent ongoing violations of federal law. Biggs v. N.C. Dep't of Pub. Safety, 953 F.3d 236, 242 (4th Cir. 2020). To fall within this exception, a plaintiff must allege "an ongoing violation of federal law" and seek relief that is "properly characterized as prospective." Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (internal quotation marks omitted). Because Zeno's amended complaint does not allege an ongoing violation of his federal constitutional rights, his claims under § 1983 against the defendants in their official capacities must be dismissed.

### 2.    Claims Against Defendants in Their Individual Capacities

In order to state a claim against a defendant in their individual or personal capacity under § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018)

4

(internal quotation marks and alterations omitted). "Liability is thus determined person by person: A plaintiff must show 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) (quoting Iqbal, 556 U.S. at 676).

Zeno claims that each of the named defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by failing to protect him from being attacked by the other inmate. "Because being assaulted in prison is not 'part of the penalty that criminal offenders pay for their offenses against society,' prison officials are responsible for 'protecting' prisoners from violence at the hands of other prisoners.'" Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014) (internal citations and alterations omitted) (quoting Farmer v. Brennan, 511 U.S. 825, 833–834 (1994)). However, not every injury suffered by a prisoner at the hands of another prisoner "translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.

To state a claim under the Eighth Amendment, an inmate must satisfy a two-part test, consisting of both an objective and a subjective component. Raynor v. Pugh, 817 F.3d 123, 127 (4th Cir. 2016). "First, the inmate 'must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury,' or a substantial risk thereof." Id. (quoting Danser, 772 F.3d at 346–47). "Second, an inmate must show that the prison official had a 'sufficiently culpable state of mind,' which, in this context, consists of 'deliberate indifference to inmate health or safety.'" Id. at 127–28 (quoting Farmer, 511 U.S. at 834).

Deliberate indifference is "a very high standard" that cannot be met by a showing of mere negligence. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "A plaintiff establishes deliberate indifference by showing that [a] prison official actually knew of and disregarded an excessive risk

5

to inmate health or safety." <u>Danser</u>, 772 F.3d at 346 (internal quotation marks and alterations omitted). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually "draw the inference." <u>Id.</u> (internal quotation marks omitted). The official "must also subjectively be aware that his actions were inappropriate in light of that risk." <u>Cox v. Quinn</u>, 828 F.3d 227, 236 (4th Cir. 2016) (internal quotation marks omitted).

Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately not was averted." <u>Farmer</u>, 511 U.S. at 844. "In failure-to-protect cases, 'prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm.'" <u>Raynor</u>, 817 F.3d at 128 (quoting <u>Prosser v. Ross</u>, 70 F.3d 1005, 1008 (8th Cir. 1995)); <u>see also</u> <u>Winfield v. Bass</u>, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) (emphasizing that "such heroic actions are not constitutionally required"). However, "'completely failing to take <u>any</u> action' to stop an ongoing assault on a prisoner can amount to deliberate indifference." <u>Raynor</u>, 817 F.3d at 128 (quoting <u>Winfield</u>, 106 F.3d at 532). "Thus, courts have found that 'a corrections officer's failure to intervene in a beating can be the basis of § 1983 liability' if the officer had a reasonable opportunity to act and 'simply refused to do so.'" <u>Id.</u> (brackets omitted) (quoting <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3d Cir. 2002)).

Applying these principles, the court concludes that Zeno's amended complaint fails to state a cognizable Eighth Amendment claim against any of the named defendants. First, there are no allegations from which the court could reasonably infer that any of the defendants acted with deliberate indifference prior to the attack by the other inmate. To the extent Zeno alleges that

6

Flanary and McCray failed to "properly follow[] all security procedures" when searching the other

inmate, Am. Compl. at 6, "a merely negligent or careless . . . search would not result in liability

under the deliberate indifference standard." Strickland v. Halsey, 638 F. App'x 179, 187 (4th Cir.

2015). Nor would the alleged failure of other defendants to perform adequate security checks or

rounds. See Tucker v. Evans, 276 F.3d 999, 1001–02 (8th Cir. 2002) (holding that a correctional

officer's failure to properly perform his inspection duties at most constituted gross negligence

and did not support a finding of deliberate indifference). This is true even if defendants' actions

or omissions violated prison security policies. See King, 76 F.4th at 267 ("[T]he record does not

show a policy requiring an officer to look into each cell window. Even if it did, knowingly

violating a prison policy does not amount to deliberate indifference.") (emphasis omitted) (citing

Rich v. Bruce, 129 F.3d 336, 339–40 (4th Cir. 1997)). In short, the amended complaint does not

plausibly allege that any of the defendants actually knew of and disregarded a substantial risk of

serious harm prior to the attack. Although the attack occurred at one of the state's "supermax"

facilities, Smith v. Collins, 964 F.3d 266, 270 (4th Cir. 2020), courts have recognized that "the

general risk of violence associated with placement in a higher-security prison does not, in itself,

suggest knowledge of a substantial risk of harm." Owens v. Baldwin, 822 F. App'x 490, 491–92

(7th Cir. 2020) (citing Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011)); see also Parrish v.

Cleveland, 372 F.3d 294, 304 (4th Cir. 2004) ("[Fourth Circuit precedent] makes clear that

officials can be liable under the deliberate indifference standard only to the extent that they

actually appreciate the risk factors in a given case, and only to the extent that they make the causal

inference that the circumstances as they perceived them created a substantial risk of serious

harm.") (citing Rich, 129 F.3d at 304).

Zeno has also failed to plausibly allege that Flanary, Taylor, or any other defendant acted with deliberate indifference by failing to immediately intervene in the attack. As noted above, the Fourth Circuit and other federal appellate courts have recognized that correctional officers have no constitutional duty to intervene in an armed assault of one inmate upon another when intervention would place the correctional officers in danger of physical harm. Raynor, 817 F.3d at 128 (citing Prosser, 70 F.3d at 1008). Because correctional officers "need only take reasonable measures to guarantee" the safety of prisoners, officials must "consider the threat to the safety of staff and inmates" before "intervening to quell an inmate disturbance." Edwards v. Black, 854 F. App'x 382, 385 (2d Cir. 2021) (internal quotation marks omitted); see also Rios v. Scott, 100 F. App'x 270, 272 (5th Cir. 2004) (noting that "there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury"). While Zeno faults Flanary and Taylor for allowing 30 to 60 seconds to elapse before they intervened in the attack, he does not allege facts indicating that the defendants had a "reasonable opportunity" to intervene more quickly without risking their own health and safety. Raynor, 817 F.3d at 128. Consequently, the amended complaint fails to state a claim against the defendants based on a theory of failure to intervene or bystander liability. See Okey v. Strebig, 531 F. App'x 212, 215 (3d Cir. 2013) ("Okey's failure to intervene claim also fails because the amended complaint does not allege that Strebig failed or refused to intervene during the assault when there was a realistic and reasonable opportunity to do so.") (citing Smith, 293 F.3d at 650); see also Edwards, 854 F. App'x at 385 (concluding that a correctional officer who failed to immediately intervene in an attack by another inmate was entitled to summary judgment on a claim of deliberate indifference since the inmate "produced no evidence that [the officers] could have safely interceded earlier");

8

Bracey v. Pa. Dep't of Corr., 571 F. App'x 75, 77 n.2 (3d Cir. 2014) (holding that an inmate failed to create a genuine issue of material fact as whether officers unlawfully failed to intervene in an assault by an armed inmate where a report indicated that the inmate was secured within four minutes of a fight being reported and the inmate did not "allege that correction officers could have reasonably intervened sooner").

Finally, to the extent Zeno seeks to hold any of the defendants liable under § 1983 based on their supervisory positions, "[i]t is well settled that there can be no supervisory liability when there is no underlying violation of the Constitution." Phillips v. Bailey, 337 F. Supp. 2d 804, 807 (W.D. Va. 2004) (collecting cases). Additionally, the amended complaint is devoid of facts sufficient to satisfy the Fourth Circuit's test for supervisory liability. See Johnson v. Robinette, 105 F.4th 99, 123 (4th Cir. 2024) ("To establish supervisory liability, the inmate must prove: '(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that. posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'") (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)). Consequently, any claim of supervisory liability under § 1983 must be dismissed.

**B.      Claims under State Law**

Because the federal claims asserted in the complaint are subject to dismissal for failure to state a claim, the court declines to exercise supplemental jurisdiction over any claim asserted under state law and will dismiss those claims without prejudice. See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has

dismissed all claims over which it has original jurisdiction"); <u>Williams v. Mitchell</u>, 122 F.4th 85, 92 (4th Cir. 2024) ("Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those without prejudice.") (internal quotation marks omitted).

### IV.    Conclusion

For the reasons stated, the defendants' motion to dismiss, ECF No. 53, is **GRANTED** with respect to the federal constitutional claims asserted under 42 U.S.C. § 1983. Those claims are dismissed without prejudice for failure to state a claim, and any remaining claims under state law are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Because Zeno is proceeding <u>pro</u> <u>se</u>, the court will afford him one final opportunity to file a second amended complaint within 30 days if he believes that he can remedy any of the pleading deficiencies identified above. If a second amended complaint is not filed within 30 days, the case will be stricken from the court's active docket.

An appropriate order will be entered.

Entered: March 18, 2026

Michael F. Urbanski
U.S. District Judge
2026.03.18
16:45:18 -04'00'

Michael F. Urbanski
Senior United States District Judge

10